# DECISIONS IN CASES NOT REPORTED.

## FIFTH DEPARTMENT, JUNE TERM, 1894.

Charles S. Lamey. Respondent, v. Rochester Railway Company, Appellant.— Judgment appealed from affirmed, with costs, on the opinion of the referee.

John W. Leehan, an Infant, by Guardian, etc., Respondent, v. The Lake Shore and Michigan Southern Railroad Company, Appellant.— Judgment and order appealed from affirmed.

Henry H. Messersmith, Respondent, v. The Travelers' Insurance Company, of Hartford, Conn., Appellant.— Judgment appealed from affirmed.

The People of the State of New York, Respondent, v. Carl Oettinger, Appellant.— Judgment and conviction of the Court of Sessions of Monroe county appealed from reversed and new trial granted, and for that purpose the proceedings are remitted to that court.

Appeal from judgment of the Monroe Court of Sessions convicting the defendant of the crime of grand larceny. The indictment contained three counts, all of them charging the commission of the alleged offense on August 4, 1893. By the first it is charged that the defendant, acting in the capacity of agent, servant, bailee and bookkeeper of the Voght Manufacturing Company, having in his custody thirty dollars of the money of that company, feloniously embezzled and appropriated it to his own use. By the second the defendant is charged with feloniously secreting and appropriating to his own use a like sum of money of that company ; and by the third that he feloniously stole and carried away such sum of money of the company.—

BRADLEY, J. : In the fall of 1891 the defendant went into the service of the Voght Manufacturing Company at the city of Rochester as clerk, and in July, 1893, he was promoted to the position of head bookkeeper, and accountant, which place he occupied until he was discharged in November, 1893. It was the custom of the company to pay the wages of its employees weekly. For the purpose of ascertaining the amount they respectively were entitled to receive, the foreman furnished to the defendant the time of their service, and he entered it in the time book kept for the purpose. Taking into account the money on hand, a slip containing a statement of the amount requisite was taken to the treasurer, who would draw the check of

the company upon its bank account, with the proceeds of which the amount to which each workman was entitled was put into an envelope for him. In the time book was entered the wages paid the men respectively and in the journal was entered the amount paid them. The entries in those books were in the handwriting of the defendant, and by the entries in the former it appeared that the amount paid out for wages on August 4, 1893, was $379.66, and the corresponding entry in the journal of the amount was $409.66, thus representing a difference of thirty dollars, which it is charged was appropriated by the defendant to his own use. And in support of the charge of his felonious intent evidence was given to the effect that in several weeks subsequent to that time like discrepancies appear by the entries in those books producing the same and greater differences between the entries of payment of wages in the time book and in the journal. While this indicated an irregularity in the defendant's bookkeeping which would create suspicion against him, it did not necessarily prove that he had taken the differences in amount so represented. Another witness, who afterwards became a bookkeeper, testified that he had examined the situation on the 4th of August, 1893, as represented by the books, including the cash book of the company, and that it appeared by the cash book that there was on hand at the close of the day before, $29.87; that the receipts on that day, including the proceeds of the check of the company drawn upon its bank account, were $58.47, $3.09, $2.60 and the amount of the check $575, making together $669.03; that the amount paid out was the pay roll, $379.66, salaries, $151.77, to Mr. Voght, $41.50, sundries during the week, $32.37, and the balance remaining as appeared by the cash book was $33.73, making $639.03; producing a like difference of $30. This state of facts was apparently sufficient to justify the conclusion that somebody had on that day taken that amount of the company's money. The defendant as a witness in his behalf testified that the slip containing statement of wages and salaries and such sum as was needed was written by another, the assistant bookkeeper, that he (defendant) took the entry made in the journal from the slip as it appeared in the latter, and that the slip and entry in the journal would agree. The slip, as was common, appears not to have been returned after it was taken to the treasurer for the purpose of the check, but was destroyed. He also testified that he did not take thirty dollars or any other sum of the company's money. It appears that the cash book was kept and the entries made in it by the assistant bookkeeper, who also had access to the safe and who had charge of the petty cash drawer in which money was kept to pay freight, express charges and other minor expenses. There was evidence sufficient to justify the submission of the case to the jury for them to determine whether or not the defendant was guilty of the offense charged. And, therefore, the motion made at the close of the evidence for his discharge was properly denied. After the defendant had been examined as a witness, Mr. Voght, the president and treasurer of the company, was recalled, and after stating what the slips contained and that they were destroyed, was on the cross-examination asked: "They would be of some value if you had them now?" answered, "Yes, sir; they would be strong evidence against the prisoner." Thereupon the defendant's counsel asked that the answer be stricken out. This was denied and exception taken. The latter part of the answer was not responsive to the question

and should have been stricken out, and the motion may fairly have been understood to have had reference only to that part of the answer given by the witness. It is possible that the defendant may have been prejudiced by the expression that the slips would be strong evidence against him. The court in charging the jury stated that on the day the check of the company was made there was a balance on hand of twenty-nine dollars and eighty-seven cents, and that there should have on that day remained in the defendant's hands a balance of sixty-three dollars and thirty-three cents, whereas in fact there was but thirty-three dollars and thirty-three cents. The defendant's counsel excepted to that part of the statement in the charge that sixty-three dollars and thirty-three cents should have remained in the defendant's hands that day. Treating the entries in the cash book as evidence such appeared to have been the fact. But it may be observed that the entries in the cash book were not made by the defendant, nor did he, so far as appears, have anything to do with it. In that view the defendant's counsel requested the court to charge the jury that it was not shown that the company had any definite amount of money in its possession on the 4th of August, 1893. This was declined and exception taken. The fact was dependent upon the entries in the cash book as evidence. They were not made by the defendant. It does not appear that he had any knowledge of them, nor was any evidence verifying the entries given by the person who made them, and while the attention of the court was not called as specifically as it ought to have been to the question sought to be raised by the defendant's counsel, we think the fact should not be overlooked that the defendant may have been prejudiced by the effect which may be treated as having been given by the charge of the court to those entries in the cash book, the correctness of which was not supported by evidence other than that inherently manifested by them. The defendant should have a new trial. The conviction and judgment should be reversed and a new trial granted. Dwight, P. J., Lewis and Haight, JJ., concurred.